CHAMBERLAIN v. O'LEARY.

1. PAYMENT—BURDEN OF PROOF — MORTGAGES — ESTATES OF DECEDENTS.

  In a proceeding to foreclose a mortgage of a decedent, the burden of proving payment rests on the defendant.

2. SAME—EVIDENCE.

  In a proceeding to foreclose a mortgage, which, with the note, was in decedent's hands, evidence that some payments made were not indorsed on the paper, and that the last payment was for one hundred dollars, for which deceased gave a receipt in full, although upwards of seven hundred dollars apparently remained due on the note, with testimony of defendant's son, who was then ten years of age, that defendant said he had come to pay the last hundred dollars on the indebtedness, and deceased stated that he would have to hunt up the papers and would have them discharged, is *held* not to establish the payment of all the debt, by a preponderance of the evidence.

Appeal from St. Clair; Tappan, J.  Submitted April 19, 1910.  (Docket No. 65.)  Decided June 6, 1910.

Bill by Charles W. Chamberlain, administrator of the estate of James and Isaac Thompson, deceased, against Michael O'Leary for the foreclosure of a mortgage.  From a decree dismissing the bill, complainant appeals.  Reversed.

*Henry J. McKay* and *James G. Tucker*, for complainant.

*Cady & Crandall*, for defendant.

OSTRANDER, J.  The amount of the original indebtedness, the execution and delivery of the note and mortgage set up in the bill, the character in which complainant sues, are admitted.  The sole issue raised by the pleadings is whether the debt evidenced by the note, payment of which is secured by the mortgage sought to be foreclosed, was paid during the lifetime of the mortgagees.  The court below determined this issue in favor of defendant, and dismissed the bill.  As both of the mortgagees died before the bill was filed, and as the testimony of the mortgagor could not be received to prove payment, the court below derived little, if any, advantage from seeing and hearing the witnesses who were produced.  We have reached the conclusion that payment of the debt is not proved and refer, briefly, to the facts and rules which we think support this conclusion.

The note and mortgage were found by the administrator among other papers of decedent, James Thompson. The note is dated September 18, 1889, is made payable to James Thompson and Isaac Thompson, is due three years after date, is for $1,050, and draws interest at 8 per cent. per annum, payable annually.  It contains a clause permitting payments of principal at the end of each year. When it came to the hands of complainant, the following indorsements appeared:

"Received one year's interest and $96 on the principal September 18, 1890. Received $100, April 25, 1896. Received $50 January 12, 1897. Received November 27, 1897, $80. Received $100 December 8, 1898. Received $100, November 5, 1900. Received $50, November 11, 1900. Received $40, January 30, 1901. Received $70, October 11, 1901. Received $100, May 3, 1902. Received June 19, 1902, $50. Received July 16, 1902, $30. Received January 9, 1903, $50. Received July 18, $100. Received January 13, $100."

The papers themselves, in the hands of complainant's intestate, indicated that considerable of the debt was unpaid, as a computation will disclose. The burden of proving payment was upon the defendant. He produced receipts for each of the payments indorsed on the note except for the first two. He also produced a receipt dated October 19, 1892, for $70, and one dated May 15, 1895, for $100, which appear to be genuine, and these sums are not indorsed upon the note. The wife of defendant testified that she had seen a receipt, not produced, date not remembered, for $100, which was signed by both Isaac and James. All receipts which were produced were signed "James Thompson." The receipt given for the last payment indorsed upon the note was produced. It is the evidence principally relied upon to prove payment of the debt in full. It appears to have been read into the record according to its form and in the printed record is given as follows:

"ROMEO, January 13, 1904.
"Received of Michael O'Leary, one hundred dollars to apply on his note, secured by mortgage of even date. Payment in full January 13, 1904.
"JAMES THOMPSON."

A son of defendant, 10 years old July 17, 1904, testified at the hearing in 1909 that he was with his father when he made the payment in January, 1904—the last payment. He saw his father give Mr. James Thompson money and saw Mr. Thompson give his father a receipt. He further testified that his father said to Mr. Thompson that he had

come to pay him the last hundred dollars on the place. Thompson said it would take him some time to hunt up the papers, and he would have the mortgage and abstract and note sent to Port Huron, the mortgage discharged, and the papers sent on "to us." This is the significant portion of his testimony. It is not claimed that the mortgagees had agreed to accept less than the debt and interest computed according to the contract and to law.

It is claimed that by producing receipts for money paid but not indorsed upon the note it has been shown that the record made by the indorsements is not to be relied upon, and that the last receipt given by Thompson is a written admission that the entire debt was then paid, uncontradicted and unexplained except by the undischarged mortgage and the note in the hands of the complainant. Assuming that the receipt requires explanation, we think the testimony strongly shows that a mistake was made. It is just as likely that the receipt which Mrs. O'Leary claimed to have seen, but did not produce, was a receipt for the second payment indorsed upon the note, as that it was for a payment not indorsed thereon. If it was a receipt for that payment, then defendant has produced receipts for all payments which are indorsed except the first one. Crediting defendant with all moneys indorsed and with $170 not indorsed, and computing the amount due in January, 1904, when the last payment was made, the result is $872.40. The payment made that day left the sum of $772.40 either unpaid or the payments wholly unaccounted for. If this amount was paid in sums such as constituted the other payments, there must have been many payments not indorsed and many receipts not produced. It is incredible that there was due, that day, a balance of just $100. We think the testimony of young O'Leary is entitled to little weight. He may have believed the facts to be as he stated them. But when it is considered how irregularly payments had been made, the length of time required to compute the amount due, the necessity (it is now claimed) for consulting something besides the note and its

indorsements in making a computation, the fact, appearing from the testimony of the administrator, that decedent, James Thompson, had no record, book or other, except upon the note, of the payments which had been made, the improbability that a computation had previously been made to the date when defendant would make the next payment, the considerable amount which appears to have been then due, the somewhat equivocal language employed in the receipt, we are not convinced that the defendant paid the debt, in full, on January 13, 1904. The fact that no discharge was executed, and that the note was not surrendered, while not conclusive, must nevertheless be considered.

The decree below is reversed, with costs of both courts. Complainant may have the usual decree in foreclosure proceedings, to be proposed and settled according to the rule; the amount due to be computed as of the date of the decree. Upon the entry of decree the record will be remanded to the court below for enforcement.

HOOKER, MOORE, MCALVAY, and STONE, JJ., concurred.